UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUSAN KWON, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:19CV2133 HEA |
| JOSHUA SADLER, et al., | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Herman Reiser's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have responded to the Motion and Defendant has filed his reply.

**Facts and Background**

Plaintiffs' First Amended Complaint, alleges the following:

For several months leading to these acts, a controversy had been brewing in the private Terre du Lac subdivision, a development containing thousands of homes and lots in northern St. Francois County and Washington County, Missouri. Multiple Terre du Lac Association property owners (home and lot owners) had been aligning politically with one side or another, and the individual defendants in this case—three private security officers employed by the Association and a

homeowner—considered the three women who are plaintiffs in this case to be aligned with the wrong side of the Association dispute.

Kwon, who, on and off for several years, has volunteered on the Events Committee for the Association had recruited Connie Cathcart, Sharon Cathcart and several other women to help organize the Association's Fourth of July parade. For many years, this committee had met in the board room at the Association, as did the Finance Committee and other committees of the Association. On June 6, several hours after notifying Association officials of her intent to do so, Kwon convened four committee volunteers for the meeting in the boardroom. Upon arrival, as a courtesy, she asked for and obtained permission of the Association staff to use the board room.

Herman Reiser, a homeowner with no official status, heard about the meeting. He drove to the Association building, burst through the door to the board room and demanded the four women leave. He accused at least one of the women of being aligned with a board member he opposed. When the women did not leave, Reiser enlisted the support of two security officers, Senior Officer Joshua Sadler and Captain Christopher Callender, who, under the direct supervision of Chief Timothy Cook, proceeded to accost the three plaintiffs and arrest them. In doing

so, they injured Sharon, causing her wrists to bleed, requiring administration of medical help. They transported one of the women, while handcuffed, to the county jail and chained the other two women to a metal bench in their security guard office for hours while they awaited transport, also while handcuffed, to the county jail. All three then had to wait for several more hours for their release by St. Francois County law enforcement officials. No charges were issued, and no bond was required.

    On the morning of June 6, 2019, Plaintiff Kwon communicated electronically with two Association board members, Adam Hector and Mike Miller, stating her intention to convene the Events Committee meeting at the Association board room, where the Events Committee meetings were normally held. Neither board member objected. In the early afternoon, Plaintiffs, along with Debra Whitener, another Association member whose husband had been president of the Association board several years prior, arrived at the Association offices and, as a courtesy, asked the staff there if it would be alright for them to use the board room. Tammy Reeves, an employee of the association, stated her approval and said she needed only to remove some papers from the table. None of the office staff attempted to restrict the plaintiffs' use of the board room or expressed any concern about such use to the plaintiffs.

The four women entered the board room, as the committee always had, and proceeded to draw up plans for the Terre du Lac Fourth of July parade. After about 30 minutes, Defendant Herman Reiser, a Terre du Lac resident who at all relevant times has had no official capacity with the Terre du Lac Association, Inc., opened the door and barged into the room. He told the four women that they were not supposed to be in the building behind locked doors where there was financial information. The women were not meeting behind locked doors.

Reiser had no authority to order the women to leave the room, but he pretended to have that authority. First, he ordered the women to leave, saying that they were under a court order to do so. He said this, having no reason to believe there was such a court order and knowing that there was no such existing court order against anyone, much less the plaintiffs.

When asked why he was in the room, Reiser stated, "I was instructed to by my lawyer. It's OUR record room." It was in fact no more his record room than the record room of any Association member, including the women. Throughout the entire incident, Reiser pretended to have authority to order the women to leave, knowing full well that he did not possess such authority.

After ordering the women to leave, Reiser threatened that if they did not leave, he was going to call the police and have the police arrest the women. Kwon

responded by asking Reiser if he wanted to join the committee. The women did not leave the room.

Reiser left the room and came back shortly thereafter with Defendant Sadler. Reiser then took a seat across the conference room table from the women, from where he would observe the women's interactions with Defendants Sadler and Callender, including the later handcuffing, arrest and removal of the women from the room.

After entering the room, Sadler said, "Per court order, you guys can't be in here." Like Reiser, Sadler had no reason to believe there was such a court order and knew there was no court order in effect forbidding the women from being in the room. Sadler continued, "Either leave or you're going to be trespassing." Cathcart responded, "I'm not leaving." Sadler responded, "Then you're going to be arrested." Kwon asked Sadler if the door had been locked. He said, "No ma'am, it was not."

Defendant Callender entered the room and, referring to Reiser, told the women that "an agent of the building told you to leave this building." Defendants Reiser, Sadler and Callender all knew that Reiser had no authority to order the women out of the room but agreed to pretend that he had such authority. Callender then directed, "I'm telling you right now you need to leave this building." Cathcart

5

asked, "But why?" Callender exclaimed, "Because I'm telling you to," and later, "Because I am an agent of this department." Callender later states, "You have been asked by an agent of this building whether it was Officer Sadler or anyone else inside here." The only other persons in the room were himself (Callender) and Reiser, who was still remaining in the room.

Reiser and the two police officers, Defendants Sadler and Callender, all agreed to falsely pretend that a court order existed that forbade their presence in the room, and to falsely pretend that Reiser had authority to order the women to leave the room, and that these things would form a basis for a false charge of trespassing upon which the unlawful arrest of the women would be based.

Of the four women gathered for the Fourth of July planning meeting, Plaintiffs Kwon, Connie Cathcart and Sharon Cathcart were forcefully arrested and handcuffed by Defendants Sadler and Callender, with Defendant Reiser looking on.

Plaintiff Sharon Cathcart, 68 years old, repeatedly told Callender that she was leaving. He responded, "You had plenty of chances before," and roughly cuffed her, squeezing the cuff too tight. She recoiled in pain and ended up on the ground, where Callender attached the other cuff. Plaintiff Connie Cathcart, had just had major shoulder surgery, and she pulled her arm back, saying "Stop." Callender

6

responded by roughly grabbing her arm to cuff her. She was in pain. Defendants Callender and Sadler then dragged her down the stairs to the police station.

Plaintiffs claim, on information and belief, and based on the circumstances described above both before Defendant Reiser left the room and after he returned with Officer Sadler, Reiser did what he told the women he was going to do before he initially left the room, which was to get the police and have them arrest the women.

After all, three Plaintiffs were taken downstairs to the Terre du Lac police station, Connie   was taken to one room where she remained for about an hour before she was transported, handcuffed, to the St. Francois County jail in Farmington, more than 15 miles away. Kwon and Sharon Cathcart were chained to a metal bench in the Terre du Lac police department for about two hours, prior to also being transported to the jail in Farmington.

While still at the Terre du Lac police station, Kwon and Sharon Cathcart asked multiple times for water, but Callender refused. Medical attention was requested multiple times as Sharon's wrist continued to bleed. At one point, a wet paper towel and a dry paper towel were provided. Kwon requested that Sharon's "wound needs to be cleaned and bandaged to stop the bleeding." Callender ignored

the requests. Kwon could not leave the bench, so she extended her foot far enough to kick the door two times. The officers did not respond, so she called out, "She [Sharon Cathcart] needs medical attention, she's still bleeding!" After two more kicks against the door, Callender opened it and asked if Sharon needed an ambulance. Kwon said she just needed the wound cleaned and dressed with a bandage to stop the bleeding. Callender said they did not have those supplies. After more bleeding, an ambulance was requested. Someone came and used saline on the bleeding wound and bandaged both wrists, at which point Sharon said she did not need an ambulance. Kwon requested water multiple times, but Callender ignored her.

When the women arrived at the St. Francois County jail, they were told they would be held for 24 hours. The sheriffs at the jail were courteous and respectful as the women were being processed. Their handcuffs were removed, and they walked about freely, following instructions given to them, prior to being placed in a cell. They were provided food and water.

After several hours, Plaintiffs were released by St. Francois County authorities without being charged and without having to post bond.

Defendants Cook, Sadler and Callender have caused and allowed the

8

dissemination of their body-cam videos of the foregoing events to friends, acquaintances and neighbors of the Plaintiffs, causing Plaintiffs further embarrassment and humiliation.

The arrests made of the three women by Callender, Sadler and Cook were without a warrant and without probable cause to believe a crime had occurred or was about to occur.

Defendants lacked legal authority to order Plaintiffs to leave the property where they were arrested.   No one with legal authority to do so ordered Plaintiffs to leave the property where they were arrested. Defendants lacked the legal authority to detain, handcuff, search, arrest, forcibly transport and confine Plaintiffs.

Plaintiffs were at all times lawfully present in the Association building and conference room.

Count I is brought pursuant to 42 U.S.C. § 1983against all defendants for an alleged violation of plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures when they were detained, handcuffed, searched, arrested, forcibly transported and confined.   Plaintiffs allege that Defendants committed these acts of unlawful search and seizure jointly and in concert and conspiracy with each other, and thereby acted under color of state

9

law to deprive Plaintiffs of constitutionally protected rights under the Fourth Amendment.

Plaintiffs further claim the actions of the defendant officers were the actions of Defendant Terre du Lac Association, Inc. These actions were taken pursuant to the policy of Defendant Terre du Lac Association, Inc., and the policy of Defendant Terre du Lac Association, Inc., caused the actions taken by the defendant officers. The policy of the Defendant Terre du Lac Association, Inc. was that Plaintiffs be deprived of their constitutional rights and that the defendant officers undertake the alleged unlawful actions against Plaintiffs on June 6, 2019.

Plaintiffs allege Defendant Reiser is a state actor for purposes of this case by reason of the fact that he was jointly engaged and in coordination, concert and conspiracy with the other defendants to deprive Plaintiffs of their constitutional rights as stated herein.

Count II alleges a violation of Plaintiffs' rights to be free from deprivations of their liberty and property interests without due process of law under the Fourteenth Amendment of the United States Constitution by reason of the alleged wrongful detention, handcuffing, search, arrest, forcible transportation and confinement.

Plaintiffs claim the actions of the defendant officers, who hold commissions as county sheriff deputies, constituted state action at all times relevant herein. Further, Plaintiffs claim that in committing these acts, Defendants acted jointly and in concert and conspiracy with each other, and thereby acted under color of state law to deprive Plaintiffs of their constitutionally protected rights under the Fourteenth Amendment. Plaintiffs claim the actions taken were pursuant to a policy of Defendant Terre du Lac Association. Plaintiffs again allege Defendant Reiser is a state actor for purposes of this case by reason of the fact that he was jointly engaged and in coordination, concert and conspiracy with the other defendants to deprive Plaintiffs of their constitutional rights.

Count III is a state law claim for false imprisonment. Plaintiffs claim that Defendant Reiser encouraged, caused, promoted and instigated the unlawful confinement of Plaintiffs.

## Discussion

**Subject Matter Jurisdiction**

Defendant Reiser moves to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that this court lacks subject matter jurisdiction based on the *Rooker-Feldman* Doctrine.

11

The *Rooker–Feldman* doctrine defines the extent to which a federal district court's jurisdiction over certain claims is limited pursuant to 28 U.S.C. § 1257. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-92 (2005). Although federal district courts have original jurisdiction over all "civil actions arising under the Constitution, laws, or treaties of the United States" by operation of 28 U.S.C. § 1331, Section 1257 modifies the original subject-matter jurisdiction and vests jurisdiction over state-court judgments in the Supreme Court. *Id.* ("[Section] 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court....").

The *Rooker–Feldman* doctrine encompasses four criteria that must be satisfied before the federal district court is deprived of subject-matter jurisdiction. The criteria contemplate cases that have been brought by "[1] state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the [federal] district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil Corp.,* 544 U.S. at 284.

Congress reserved review of state-court final decisions to the United States Supreme Court, and such appeals cannot be taken in the lower federal courts. 28 U.S.C. § 1257. As a consequence, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a

12

United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights" *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). The Supreme Court has expressed some disapproval of the lower federal courts' extension of the doctrine to "overrid[e] Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and supersed[e] the ordinary application of preclusion law." *Exxon Mobil Corp.,* 544 U.S. at 283. At the very least, courts are reminded of the narrow application of the rule, "confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284. "*Rooker–Feldman* is not simply preclusion by another name." *Lance,* 546 U.S. at 466.

In this case, Defendant Reiser attempts to preclude this Court's jurisdiction because of an oral temporary restraining order that was adopted by the state court *after* the incident that is the basis for this lawsuit. The argument fails for several reasons. Initially, the oral TRO was not a final judgment, as evidenced by the fact that it was adopted in a written Order and Judgment.

Secondly, the TRO was not entered against Plaintiffs. Plaintiffs were not parties to the state court action giving rise to the entry of the TRO.

13

> The *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.
>
> A more expansive *Rooker–Feldman* rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts " 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.' " *Baker v. General Motors Corp.,* 522 U.S. 222, 246, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)); see *Exxon Mobil, supra,* at 293, 125 S.Ct. 1517. Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments. Incorporation of preclusion principles into *Rooker–Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act.

*Lance v. Dennis*, 546 U.S. 459, 464–67 (2006)(footnotes omitted).Plaintiffs were not parties to the state action wherein Defendant Reiser secured a temporary restraining order.

Further, Plaintiffs are not "complaining of an injury *caused by* the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil,* 544 U.S. at 291(emphasis added). The injury they complain of, and seek compensation for,—a violation of their constitutional rights—was the result of the alleged action of Defendants, not a consequence of the state-court judgment. *Knutson v. City of Fargo*, 600 F.3d 992, 995–97 (8th Cir. 2010).   The *Rooker-*

14

*Feldman* doctrine does not apply herein. The Motion to Dismiss for lack of subject matter jurisdiction will be denied.

**Failure to State a Claim**

Defendant Reiser also moves to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.   To decide the motion to dismiss under Rule 12(b)(6), the court may consider the complaint, some materials that are part of the public record, and materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Inferences are construed in favor of the non-moving party. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).

Plaintiffs' First Amended Complaint alleges that Defendant Reiser acted in concert with and formed a conspiracy with the other defendants to deprive Plaintiffs of their constitutional rights and to falsely imprison Plaintiffs. The sparse allegation regarding Reiser's actions fail to state a claim that is plausible on its face.

Although a § 1983 conspiracy claim requires proof of action under color of state law, "[i]t is enough that [a private party] is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Plaintiffs must, however, allege sufficient facts, not conclusions, to satisfy the *Twombly* and *Iqbal* requirements. "[T]here [must be] a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994).

Plaintiffs attempt to allege the requisite meeting of the minds by alleging that defendants acted in concert and as part of a conspiracy when Reiser threatened to call, and indeed did call the Terre du Lac police to arrest Plaintiffs. Initially, the conclusory allegations that the actions constituted a conspiracy are not sufficient under *Twombly* and *Iqbal*.

Reiser's calling the police does not satisfy the meeting of the minds requirement of a conspiracy. "[A] private party's mere invocation of state legal

16

procedures does not constitute state action." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001), *cert. denied*, (2002); *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921 (8th Cir. 2020).

Plaintiffs plead nothing more than conclusory allegations with respect to the alleged actions taken by Reiser *vis a vis* a conspiracy. Merely stating that defendants acted in concert with each other does not bring their actions above mere speculation. Without some facts upon which to base the claim, Plaintiffs' First Amended Complaint lacks facial plausibility such that the Court is unable to draw the reasonable inference that Defendant is liable for participating in a conspiracy with the other defendants to deprive Plaintiffs of their constitutional rights and to falsely imprison them. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The First Amended Complaint fails this plausibility standard. Defendant Reiser's Motion to Dismiss for failure to state a cause of action will therefore be dismissed.

## Conclusion

Plaintiffs claims based on an alleged conspiracy fail to set forth sufficient facts which, taken as true for the purposes of the motion to dismiss, give rise to a cause of action against Defendant Reiser.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Reiser's Motion to Dismiss pursuant to Fed.R.Civ. P. 12(b)(6) is **granted**.

**IT IS FURHTER ORDERED** that this matter is **DISMISSED as to Defendant Reiser**.

Dated this 21st day of April, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE