## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **SUSAN KWON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:19CV2133 HEA** |
| | ) | |
| **JOSHUA SADLER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Herman Reiser's Motion for an Award of Attorneys' Fees, [Doc. No. 34]. Plaintiffs have responded to the Motion and Defendant has filed his reply.

### Facts and Background

Plaintiffs' First Amended Complaint, alleged the following:

For several months leading to these acts, a controversy had been brewing in the private Terre du Lac subdivision, a development containing thousands of homes and lots in northern St. Francois County and Washington County, Missouri. Multiple Terre du Lac Association property owners (home and lot owners) had been aligning politically with one side or another, and the individual defendants in this case—three private security officers employed by the Association and a

homeowner—considered the three women who are plaintiffs in this case to be aligned with the wrong side of the Association dispute.

Kwon, who, on and off for several years, has volunteered on the Events Committee for the Association had recruited Connie Cathcart, Sharon Cathcart and several other women to help organize the Association's Fourth of July parade. For many years, this committee had met in the board room at the Association, as did the Finance Committee and other committees of the Association. On June 6, several hours after notifying Association officials of her intent to do so, Kwon convened four committee volunteers for the meeting in the boardroom. Upon arrival, as a courtesy, she asked for and obtained permission of the Association staff to use the board room.

Herman Reiser, a homeowner with no official status, heard about the meeting. He drove to the Association building, burst through the door to the board room and demanded the four women leave. He accused at least one of the women of being aligned with a board member he opposed. When the women did not leave, Reiser enlisted the support of two security officers, Senior Officer Joshua Sadler and Captain Christopher Callender, who, under the direct supervision of Chief Timothy Cook, proceeded to accost the three plaintiffs and arrest them. In doing

2

so, they injured Sharon, causing her wrists to bleed, requiring administration of

medical help. They transported one of the women, while handcuffed, to the

county jail and chained the other two women to a metal bench in their security

guard office for hours while they awaited transport, also while handcuffed, to the

county jail. All three then had to wait for several more hours for their release by St.

Francois County law enforcement officials. No charges were issued, and no bond

was required.

On the morning of June 6, 2019, Plaintiff Kwon communicated

electronically with two Association board members, Adam Hector and Mike

Miller, stating her intention to convene the Events Committee meeting at the

Association board room, where the Events Committee meetings were normally

held. Neither board member objected. In the early afternoon, Plaintiffs, along with

Debra Whitener, another Association member whose husband had been president

of the Association board several years prior, arrived at the Association offices and,

as a courtesy, asked the staff there if it would be alright for them to use the board

room. Tammy Reeves, an employee of the association, stated her approval and said

she needed only to remove some papers from the table. None of the office staff

attempted to restrict the plaintiffs' use of the board room or expressed

any concern about such use to the plaintiffs.

The four women entered the board room, as the committee always had, and proceeded to draw up plans for the Terre du Lac Fourth of July parade. After about 30 minutes, Defendant Herman Reiser, a Terre du Lac resident who at all relevant times has had no official capacity with the Terre du Lac Association, Inc., opened the door and barged into the room. He told the four women that they were not supposed to be in the building behind locked doors where there was financial information. The women were not meeting behind locked doors.

Reiser had no authority to order the women to leave the room, but he pretended to have that authority. First, he ordered the women to leave, saying that they were under a court order to do so. He said this, having no reason to believe there was such a court order and knowing that there was no such existing court order against anyone, much less the plaintiffs.

When asked why he was in the room, Reiser stated, "I was instructed to by my lawyer. It's OUR record room." It was in fact no more his record room than the record room of any Association member, including the women. Throughout the entire incident, Reiser pretended to have authority to order the women to leave, knowing full well that he did not possess such authority.

After ordering the women to leave, Reiser threatened that if they did not leave, he was going to call the police and have the police arrest the women. Kwon

responded by asking Reiser if he wanted to join the committee. The women did not leave the room.

Reiser left the room and came back shortly thereafter with Defendant Sadler. Reiser then took a seat across the conference room table from the women, from where he would observe the women's interactions with Defendants Sadler and Callender, including the later handcuffing, arrest and removal of the women from the room.

After entering the room, Sadler said, "Per court order, you guys can't be in here." Like Reiser, Sadler had no reason to believe there was such a court order and knew there was no court order in effect forbidding the women from being in the room. Sadler continued, "Either leave or you're going to be trespassing." Cathcart responded, "I'm not leaving." Sadler responded, "Then you're going to be arrested." Kwon asked Sadler if the door had been locked. He said, "No ma'am, it was not."

Defendant Callender entered the room and, referring to Reiser, told the women that "an agent of the building told you to leave this building." Defendants Reiser, Sadler and Callender all knew that Reiser had no authority to order the women out of the room but agreed to pretend that he had such authority. Callender then directed, "I'm telling you right now you need to leave this building." Cathcart

asked, "But why?" Callender exclaimed, "Because I'm telling you to," and later, "Because I am an agent of this department." Callender later states, "You have been asked by an agent of this building whether it was Officer Sadler or anyone else inside here." The only other persons in the room were himself (Callender) and Reiser, who was still remaining in the room.

Reiser and the two police officers, Defendants Sadler and Callender, all agreed to falsely pretend that a court order existed that forbade their presence in the room, and to falsely pretend that Reiser had authority to order the women to leave the room, and that these things would form a basis for a false charge of trespassing upon which the unlawful arrest of the women would be based.

Of the four women gathered for the Fourth of July planning meeting, Plaintiffs Kwon, Connie Cathcart and Sharon Cathcart were forcefully arrested and handcuffed by Defendants Sadler and Callender, with Defendant Reiser looking on.

Plaintiff Sharon Cathcart, 68 years old, repeatedly told Callender that she was leaving. He responded, "You had plenty of chances before," and roughly cuffed her, squeezing the cuff too tight. She recoiled in pain and ended up on the ground, where Callender attached the other cuff. Plaintiff Connie Cathcart, had just had major shoulder surgery, and she pulled her arm back, saying "Stop." Callender

responded by roughly grabbing her arm to cuff her. She was in pain. Defendants
Callender and Sadler then dragged her down the stairs to the police station.

Plaintiffs claim, on information and belief, and based on the circumstances
described above both before Defendant Reiser left the room and after he returned
with Officer Sadler, Reiser did what he told the women he was going to do before
he initially left the room, which was to get the police and have them arrest the
women.

After all three Plaintiffs were taken downstairs to the Terre du Lac police
station, Connie   was taken to one room where she remained for about an hour
before she was transported, handcuffed, to the St. Francois County jail in
Farmington, more than 15 miles away. Kwon and Sharon Cathcart were chained to
a metal bench in the Terre du Lac police department for about two hours, prior to
also being transported to the jail in Farmington.

While still at the Terre du Lac police station, Kwon and Sharon Cathcart
asked multiple times for water, but Callender refused. Medical attention was
requested multiple times as Sharon's wrist continued to bleed. At one point, a wet
paper towel and a dry paper towel were provided. Kwon requested that Sharon's
"wound needs to be cleaned and bandaged to stop the bleeding." Callender ignored

the requests. Kwon could not leave the bench, so she extended her foot far enough to kick the door two times. The officers did not respond, so she called out, "She [Sharon Cathcart] needs medical attention, she's still bleeding!" After two more kicks against the door, Callender opened it and asked if Sharon needed an ambulance. Kwon said she just needed the wound cleaned and dressed with a bandage to stop the bleeding. Callender said they did not have those supplies. After more bleeding, an ambulance was requested. Someone came and used saline on the bleeding wound and bandaged both wrists, at which point Sharon said she did not need an ambulance. Kwon requested water multiple times, but Callender ignored her.

When the women arrived at the St. Francois County jail, they were told they would be held for 24 hours. The sheriffs at the jail were courteous and respectful as the women were being processed. Their handcuffs were removed, and they walked about freely, following instructions given to them, prior to being placed in a cell. They were provided food and water.

After several hours, Plaintiffs were released by St. Francois County authorities without being charged and without having to post bond.

Defendants Cook, Sadler and Callender have caused and allowed the

8

dissemination of their body-cam videos of the foregoing events to friends, acquaintances and neighbors of the Plaintiffs, causing Plaintiffs further embarrassment and humiliation.

The arrests of the three women by Callender, Sadler and Cook were without a warrant and without probable cause to believe a crime had occurred or was about to occur.

Defendants lacked legal authority to order Plaintiffs to leave the property where they were arrested.   No one with legal authority to do so ordered Plaintiffs to leave the property where they were arrested. Defendants lacked the legal authority to detain, handcuff, search, arrest, forcibly transport and confine Plaintiffs.

Plaintiffs were at all times lawfully present in the Association building and conference room.

Count I was brought pursuant to 42 U.S.C. § 1983 against all defendants for an alleged violation of plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures when they were detained, handcuffed, searched, arrested, forcibly transported and confined.   Plaintiffs alleged that Defendants committed these acts of unlawful search and seizure jointly and in concert and conspiracy with each other, and thereby acted under color of state

law to deprive Plaintiffs of constitutionally protected rights under the Fourth
Amendment.

Plaintiffs alleged Defendant Reiser was a state actor for purposes of this case
by reason of the fact that he was jointly engaged and in coordination, concert, and
conspiracy with the other defendants to deprive Plaintiffs of their constitutional
rights as stated herein.

Count II alleged a violation of Plaintiffs' rights to be free from deprivations
of their liberty and property interests without due process of law under the
Fourteenth Amendment of the United States Constitution by reason of the alleged
wrongful detention, handcuffing, search, arrest, forcible transportation and
confinement.

Plaintiffs claimed the actions of the defendant officers, who held
commissions as county sheriff deputies, constituted state action at all times
relevant herein. Further, Plaintiffs claimed that in committing these acts,
Defendants acted jointly and in concert and conspiracy with each other, and
thereby acted under color of state law to deprive Plaintiffs of their constitutionally
protected rights under the Fourteenth Amendment.   Plaintiffs claimed the actions
taken were pursuant to a policy of Defendant Terre du Lac Association.   Plaintiffs
again alleged Defendant Reiser is a state actor for purposes of this case by reason

of the fact that he was jointly engaged and in coordination, concert, and conspiracy with the other defendants to deprive Plaintiffs of their constitutional rights.

Defendant Reiser moved to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.   This motion was granted on April 21, 2020.   Subsequently, the remaining parties entered into a settlement agreement and the case was dismissed on February 1, 2021.   Defendant Reiser now moves for attorneys' fees as a "prevailing party" under 42 U.S.C. § 1988.

## Discussion

Section 1988 authorizes awards of reasonable attorneys' fees to a "prevailing party." 42 U.S.C. § 1988. A party is a "prevailing party" when he "'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoted case omitted); see *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (a prevailing party is one who obtains "at least some relief on the *merits* of his claim")(emphasis added.) Here, Defendant did not receive any relief on the merits of his claim, rather, his motion was granted based on the Amended Complaint's failure to sufficiently set forth a claim for relief.   While the Court concluded that the allegations of Plaintiffs' complaints did not rise to the level of stating a

11

plausible claim of civil conspiracy, this is not equivalent to finding that Plaintiffs'
claims were "'frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563
U.S. 826, 833 (2011)(internal citations omitted).

Plaintiffs First Amended Complaint set forth facts claiming that Defendants
were working together to violate their rights.   While the claims did not set forth
sufficient facts to plausibly establish a claim for civil conspiracy, there was some
basis contained in the First Amended Complaint for the claim. Based on the facts
which were presented, it cannot be found to establish the claims were frivolous,
unreasonable or without foundation.

### Conclusion

Defendant Reiser received no relief on the merits of the claim against him.
The First Amended Complaint was dismissed for failure to state a claim, not on a
meritorious defense.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Reiser's Motion for an Award
of Attorneys' Fees, [Doc. No. 34], is **denied**.

Dated this 20th day of July, 2021.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE
12